# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-0301V**

|  |  |
|---|---|
| ANDREW WILLIAMSON,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: February 10, 2026 |

*John Beaulieu, Siri & Glimstad LLP, Louisville, KY, for Petitioner.*

*Emilie Williams, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On March 1, 2023, Andrew Williamson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered from Guillain-Barré syndrome ("GBS"), a defined Table injury, caused by an influenza ("flu") vaccine administered on March 6, 2020. Petition at 1, ¶¶ 5, 129.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, he is not entitled to an award of attorney's fees or costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.       Relevant Procedural History

After concluding that the record as it currently stood showed Petitioner's GBS did not begin until four months after vaccination - thus well beyond the timeframe set forth in the Vaccine Injury Table - I issued an order directing Petitioner to show cause why his claim should not be dismissed. ECF No. 25. In response, Petitioner moved for dismissal of the claim (ECF No. 28), and I issued my decision on August 13, 2024 (ECF No. 30).

On September 27, 2024, Petitioner filed a request for an award of $30,913.76 in attorney's fees and costs. ECF No. 36. He "asserts that the statutory requirements of good faith and reasonable basis were met." *Id.* at 6.

On March 3, 2025 (almost five months *after* the October 11, 2024 deadline to react), Respondent provided his usual response - that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring resolution of the amount to be awarded to my discretion. Respondent's Response to Motion at 2-3, 3 n.2, ECF No. 37. He failed to provide any substantive discussion related to the additional requirements of good faith and reasonable basis applicable in non-compensated cases.[3] Petitioner has filed no reply.

## II.      Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis

---

[3] These requirements are mentioned only once in boilerplate language usually found in every response by Respondent describing the Program's payment of attorney's fees and costs as designated by Congress. Response at 1; *see* Section 15(e)(1) (for this requirement).

for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[4] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*, *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

---

[4] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis for a claim at the time of filing may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

For a GBS Table injury, onset must occur within two to 42-days post-vaccination. 42 C.F.R. § 100.3(a)XIV(D) (2017). For a non-Table injury, "a showing of a proximate temporal relationship between vaccination and injury" is required to meet the third *Althen* prong. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (setting forth the three-pronged test for causation). As I have previously noted in another GBS claim, "other special masters have never gone beyond a two-month (meaning eight week) interval in holding that a vaccination caused a demyelinating illness." *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (citing *Aguayo v. Sec'y of Health & Human Servs.*, No. 12–563V, 2013 WL 441013, at *3 (Fed. Cl. Spec. Mstr. Jan. 15, 2013); *Corder v. Sec'y of Health & Human Servs.*, No. 08–228V, 2011 WL 2469736, at *27–*29 (Fed. Cl. Spec. Mstr. May 31, 2011) (proposed four-month onset period from vaccination to GBS too long; two months is longest reasonable timeframe)). And the adoption of a two-week "extension" for non-Table GBS claims is not a hard and fast rule (and may not be all that well supported from a medical or scientific standpoint in any event).

### III.    Analysis – Reasonable Basis

Petitioner acknowledges that "[t]he critical issue was whether or not Petitioner's symptoms of GBS began within an appropriate timeframe." Petitioner's Motion for Attorney's Fees and Costs at 7. Noting that he suffered from "pre-existing health issues," Petitioner insists the medical records show a "clearly significant decline in his overall health" within several weeks of vaccination that provides evidence of a closer in time onset sufficient to satisfy the lower burden of proof required for reasonable basis. *Id.* at 8. Specifically, Petitioner contrasts positive findings observed on the date of vaccination (March 6, 2020), with symptoms he reported 24 days later (on March 30, 2020).[5] Motion at 6.

---

[5] While hospitalized for a relapse of his alcoholism on March 6, 2020, it was noted that Petitioner also suffered from morbid obesity and chronic back pain but showed no sensory deficits and "5/5" power upon examination. Ex. 4 at 14. In his Fees Motion, Petitioner contrasted these normal findings with the severe, continuous, and radiating pain from his back down his legs, accompanied by burning and numbness. Motion at 6. Although he cites Exhibit 3, it appears that Petitioner meant to cite Exhibit 4 which is the record from this March 30, 2020 visit. *See* Ex. 4 at 15.

4

However, the medical records as a whole reveal significant flaws in Petitioner's argument. For example, he first complained of lower back and leg pain (for which he sought treatment on March 30, 2020) approximately six weeks *prior to vaccination*, on January 23, 2020. Ex. 2 at 118. And at the late March appointment, he identified a symptom onset (two months before) that coincided not with vaccination, but with the previously-reported January onset. Ex. 4 at 15. Even if these symptoms could be linked to the Petitioner's later GBS – a proposition wholly lacking in evidentiary support - they would equate to a too soon, rather too late, symptom onset.

Furthermore, there is no evidence showing that the symptoms Petitioner described in late January and March 2020 improved prior to vaccination or worsened thereafter. Rather, the medical records show Petitioner suffered from lower back and leg pain, first reported in late January 2020, attributed to lumbar spondylosis,[6] and for which he sought consistent treatment.[7] The symptoms he reported on March 30, 2020 are unlikely to be evidence of vaccine-induced decline or symptoms progression.

Finally, there is a dearth of evidence connecting Petitioner's lower back and leg pain with the "leg weakness bilaterally and inability to ambulate" that he complained of during a July 13, 2020 visit to the emergency room. Ex. 5 at 3252. Acknowledging this symptom difference, Petitioner reported that "[h]e had been having back problems and back pain . . . for many years but has never had weakness like this." *Id.* Instead, he placed the onset for these later symptoms (characterized as rapidly progressing) on the previous Thursday (July 9, 2020). And none of Petitioner's treating physicians linked the symptoms Petitioner first experienced in July 2020, which resulted in his GBS diagnosis, to the earlier back and leg pain he experienced. Nor did any treating physician attribute either set of symptoms to the flu vaccine Petitioner received.

The record in this case clearly shows a GBS symptom onset no sooner than early July 2020 - approximately four months post-vaccination, and thus not only well beyond the three to forty-two day (six weeks) timeframe set forth in the Vaccine Injury Table, but

---

[6] Spondylosis "is the medical term for a small crack (fracture) between two vertebrae in your spine." www.my.clevelandclinic.org/health/diseases/10303-spondylolysis (last visited Feb. 10, 2026).

[7] On February 12, 2020, Petitioner underwent a spinal MRI which revealed "[m]ultilevel degenerative changes [of the] facet joints and discs [and] [m]ultilevel neural foraminal and canal stenosis." Ex. 4 at 22. These MRI results and diagnoses including lumbar spondylosis were included in the medical records from treatment through May 2020, provided by a pain management specialist in California who administered multiple lumbar facet and epidural injections which provided little to no relief. *Id.* at 3-16. When Petitioner returned to his hometown of Kansas City, Missouri in early June 2020, he was seen by a neurosurgeon who expressed skepticism regarding the treatment Petitioner received in California, specifically the injections he received. Ex. 2 at 149. The neurosurgeon recommended Petitioner receive additional injections from a physician he trusted and counseled Petitioner on the importance of losing weight, noting that even a loss of 50 to 75 pounds could significantly mitigate Petitioner's back pain. Ex. 2 at 146-49.

outside the longest time accepted for *any* flu/GBS claim. *See,* e.g., *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (finding eight weeks (56 days) is the longest reasonable timeframe for a flu vaccine/GBS injury that special masters have ever accepted). In addition to being insufficient for entitlement, this unambiguous symptom onset also prevents Petitioner from establishing reasonable basis – despite the lower standard of proof.

This claim was objectively untenable from the outset. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Under such circumstances, counsel reasonably bears the risk in filing a claim that lacks reasonable basis, and therefore may be appropriately denied a fees award (even if the matter was otherwise pursued in good faith).

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant only where the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.